---

(121 App. Div. 322.)

### In re PRINTUP'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department.   September 25, 1907.)

1. INDIANS—JURISDICTION OVER RESERVATIONS.

Indian Law, Laws 1892, p. 1575, c. 679, § 5, provides that any demand or right of action by an Indian, jurisdiction of which is not conferred on a peacemakers' court, may be enforced in any court in the state the same as if all parties were citizens. Decedent was an Indian residing on the Tuscarora Indian reservation, and after his death his widow and children, also Indians, petitioned the Surrogate's Court for the appointment of an administrator of his estate, alleging that no administrator had been appointed, that it was essential for the protection of creditors and the preservation of the personal estate that letters issue, and that the Tuscarora Indians had no peacemakers' court. Held, that if petitioners were without remedy to enforce their right, if any, for lack of a peacemakers' court or other Indian tribunal, section 5 was broad enough to give the Surrogate's Court jurisdiction.

2. ADMINISTRATORS—LETTERS OF ADMINISTRATION—PERSONS ENTITLED.

Under Code Civ. Proc. § 2660, declaring the order in which administration shall be granted, a person nominated in the petition for appoint-

ment as administrator, not being of the next of kin, or a creditor of decedent, is not entitled to appointment in preference to the county treasurer, who is the public administrator, without being joined with others who have a right to such appointment prior to the public administrator.

McLennan, P. J., and Robson, J., dissenting.

Appeal from Surrogate's Court, Niagara County.

Petition by Elizabeth Printup, the widow, and Charles Printup and others, sons of Daniel J. Printup, deceased, that letters of administration on the estate of decedent be issued to the person therein nominated. From a decree of the Surrogate's Court dismissing the petition for want of jurisdiction, petitioners appeal. Reversed, and remitted for a rehearing and further action by the Surrogate's Court.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Dilworth M. Silver, for appellants.
William E. Lockner, for respondent.

KRUSE, J. The deceased, Daniel J. Printup, died intestate on or about June 20, 1906, a resident of the county of Niagara, leaving personal property exceeding in value the sum of $250, and the value of all the real estate of which he died seised, wherever situate, as is stated in the petition, will exceed $2,000. His debts aggregate upwards of $500, and his son, Eleazar Printup, who is the sole contestant in this proceeding, was indebted to the deceased at the time of his death in the sum of $1,200 and upwards, as adjudged in an action in the Supreme Court of this state, in which Moses Printup and others were plaintiffs and Eleazar Printup was defendant. The decision was filed in the Niagara county clerk's office on or about October 27, 1906, although the petition does not affirmatively show that judgment has been entered thereupon. The deceased was an Indian residing upon the Tuscarora Indian reservation, which is located in the county of Niagara, and the widow and children are likewise Tuscarora Indians. The petition alleges that no administrator has been appointed by any court, that it is essential for the protection of the creditors of the estate and the preservation of the personal estate that letters of administration be issued, and that the Tuscarora Indians as a nation have no peacemakers' courts or Surrogate's Courts. None of these allegations are denied.

It is contended that the contestant's affidavit establishes that he and his brothers and the widow belong to a tribe of Indians having a separate Indian tribal or governmental organization, owing no allegiance to any other government, and not subject to our laws, and that the Indian council has exclusive jurisdiction to administer upon the estate. No oral proof or other evidence, save the affidavit of the contestant, was taken before the surrogate, and the surrogate made no findings of fact as to whether the Tuscarora Indians have any peacemakers' or Surrogate's Court, or any other judicial tribunal of their own, having the right or assuming to administer upon the estates of Indians belonging to that tribe, and we think this contesting affidavit is so general and unsatisfactory that of itself it furnishes no sufficient basis for such a finding. The case of Dole v. Irish, 2 Barb.

639, relied upon by the surrogate, is quite unlike this case. It there-
appeared that the deceased was an Indian belonging to the Seneca.
Nation; that it was a custom among the Seneca Indians at that time
that, upon the death of one of the members of the tribe, his relatives
would meet at the last place of residence of the deceased within 10
days after the death, and divide his property among themselves; that
such a division was made including the property in question before
the granting of letters of administration; but there is no proof here-
of any such custom among the Tuscarora Indians.

Counsel for the respondent in his brief states that the absence of
a Surrogate's Court does not seriously handicap the Tuscaroras, as
their wills by immemorial custom take effect like deeds at the death
of the testator, and, in cases of intestacy, the heirs simply take pos-
session of the land by the common or state law of descent, and if there
be personalty divide it among the next of kin; that often relatives
employ a white attorney to explain the state law of distribution to
them, so that they may fully understand it; and that, where there
are debts and a desire to pay them on moral grounds, the chiefs on
request will take the estate through the regular course of Indian ad-
ministration, whatever that may be. What happens in case of a con-
troversy is not stated. I think it will be found upon an examination
of the cases, both state and federal, where the courts have declined
to take cognizance of controversies between Indians, such decisions
rest upon the fact that the Indians to the controversy belong to tribes
which have governments of their own regulating their internal af-
fairs. But, where they have ceased to regulate their own affairs, with
no judicial tribunals of their own, no good reason exists for denying
to one Indian who has been wronged by another redress in our courts,
and so the Legislature has from time to time passed laws permitting
resort to be had to our courts where there is no Indian government, or
it is inadequate to protect the Indians in the enjoyment of their rights.
As early as 1847 an act was passed for the protection and improve-
ment of the Seneca Indians, as its title indicates, which provided that
one Indian may maintain an action against another under circumstan-
ces therein stated (Laws 1847, p. 468, c. 365, § 14); and section 5
of the present Indian Law, which is general in its terms, applying to
all Indians, provides that any demand or right of action, jurisdiction
of which is not conferred upon a peacemakers' court, may be prose-
cuted and enforced in any court of the state the same as if all the par-
ties thereto were citizens (Laws 1892, p. 1575, c. 679). Native In-
dians may not only hold and convey real estate, but are liable upon
their contracts. Laws 1892, p. 1574, c. 679, § 2.

The widow of the deceased and all of his children save one, join
in this appeal, and he is indebted to the estate, and is therefore in-
terested in defeating any proceeding which will compel him to pay the
debt which he honestly owes. If the appellants have any claim or
claims, and are without remedy, for the enforcement thereof for lack
of a peacemakers' court or other Indian judicial tribunal, I think they
have a right to resort to our courts for the enforcement of that right,
and that the provisions of this section are broad enough to give the
Surrogate's Court jurisdiction in a proper case.

Although the question is not raised, it is proper to suggest that the person nominated in the petition for appointment as administrator, not being of the next of kin or a creditor of the deceased, is not entitled to such appointment in preference to the county treasurer, who is the public administrator, without being joined with others who have a right to such appointment prior to the public administrator. Code Civ. Proc. § 2660.

The decree of the Surrogate's Court should be reversed, and the matter remitted to that court for a rehearing and its further action thereon.

SPRING and WILLIAMS, JJ., concur. ROBSON, J., dissents. McLENNAN, P. J., dissents upon the grounds stated in dissenting opinion in the case of Peters v. Tallchief (decided at this term of court) 106 N. Y. Supp. 64.