THE PEOPLE OF THE STATE OF NEW YORK ex rel. DONALD A. J. RAY, Appellant, against WALTER B. MARTIN, as Warden of Attica State Prison, Respondent.

Fourth Department, September 27, 1944.

*Thomas J. McKenna*, attorney (*James B. McKenna* and *Benjamin Galperin* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Wortley B. Paul* and *Henry S. Manley* of counsel) and *Beverly S. Galloway, Assistant District Attorney of Cattaraugus County*, for respondent.

CUNNINGHAM, P. J. The relator was indicted by a Grand Jury of Cattaraugus County for the crime of murder in the first degree. One of the counts of the indictment charged that the murder was committed by the defendant while he was in the act of committing a felony. It was upon this count that the defendant was found guilty by a jury after a trial in the Supreme Court of Cattaraugus County. The jury recommended life imprisonment and, thereafter on December 15, 1939, the defendant was sentenced to be confined in Attica State Prison for the term of his natural life.

The conviction of relator was appealed to this court and was affirmed. The question of jurisdiction was not raised upon the trial or upon the appeal to this court. After the sentence the relator applied to the United States District Court for a writ of habeas corpus. This was denied by Judge KNIGHT, United States District Judge, upon the ground that such writ could not be allowed until relator had exhausted his remedy in the State courts and upon the further ground that the Supreme Court of the State of New York had jurisdiction to try and convict him. Upon appeal to the Circuit Court of Appeals, Judge KNIGHT's decision was affirmed upon the ground that the relator was not entitled to a writ until it became apparent that the State courts would not or could not do justice. The question of the jurisdiction of the State Supreme Court was not passed upon. Application was then made to a State court — the County Court of Wyoming County — for a writ of habeas corpus, the relator claiming that the crime was committed on Indian lands; that the

State courts did not have jurisdiction to try him for such crime and that his trial should have been had in a Federal court. The appeal now pending before us was taken from the order of Wyoming County Court, which denied such application.

The relator is a white man and the murdered man was a white man.

It is conceded that the place where the crime is alleged to have been committed is in the city of Salamanca, which is within the original limits of Allegany Indian Reservation. The relator relies upon section 217 of title 25 of the United States Code, reading as follows: " Except as to crimes the punishment of which is expressly provided for in this title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country ".

The lands in the city of Salamanca are mostly occupied by white people, but the Indians still hold the title to them. However, the Indians have been permitted by Act of Congress to lease the lands now included in the city of Salamanca to the people who now occupy them for a term of ninety-nine years, with the right of renewal given to each lessee. (*United States* v. *Forness*, 125 F. 2d 928, certiorari denied *sub nom. City of Salamanca* v. *United States*, 316 U. S. 694.) The Indians have parted with their right to use and occupy the lands in the city of Salamanca and have passed the control thereof to the lessees.

Lands which are used and occupied by white persons under a grant of the Indian owners are not, in our opinion, Indian lands within the meaning of the statute relating to Indian country. The term " Indian lands " applies only to lands owned by Indians and occupied and used by them. (*United States* v. *Chavez*, 290 U. S. 357.)

In the early days of this country the various Indian tribes were regarded as foreign nations and regulations for their welfare and protection and for the protection of their property were made through treaties negotiated between each tribe and the United States. In subsequent years the theory that each Indian tribe was a foreign nation was discarded and the Indians were regarded as wards of the United States, and protection to them and their property was given by Acts of Congress and they became subject to the regulations contained in such Acts.

For many years this State has held in decisions of its courts and in laws enacted by its Legislature that it had jurisdiction to try Indians for crimes committed against other Indians or their

property whether on Indian lands or on other lands in the State. As late as July, 1913, the Appellate Division of this department unanimously affirmed an order of the Supreme Court of Niagara County, holding that the Supreme Court of this State had jurisdiction to try an Indian for a crime committed upon the person of another Indian within the boundary of the reservation on which both lived. (*People ex rel. Cusick* v. *Daly,* 78 Misc. 657, affd. 158 App. Div. 892.) However, this decision was reversed by the Court of Appeals which held that the power of the State must yield to the paramount authority of the Federal government and that under the statutes of the United States the power to try the defendant in that case was vested in the Federal courts. (*People ex rel. Cusick* v. *Daly,* 212 N. Y. 183.) This decision does not apply in the case at bar because the jurisdictional facts in the cited case and in this case are entirely different. In the cited case the crime was committed upon an Indian reservation, the lands of which were owned by an Indian tribe and were used and occupied by Indians. Furthermore, the crime was committed by an Indian upon the person of another Indian, both of whom were wards of the United States. In the case under consideration the crime was not committed upon lands used and occupied by Indians and was committed by a white man upon the person of another white man.

We believe that the section of the United States statutes relied upon by the relator does not apply to a crime committed by one white person against another. This statute was passed to provide for the punishment of crimes committed by Indians on Indian lands and applies to crimes committed by white persons on Indian lands against Indians or their property, but does not apply to a crime committed by a white person against another white person even though committed on Indian lands. The Federal courts do not have jurisdiction to try white citizens of the various States for crimes not committed against the Federal government or against the wards of the Federal government. This is so even though the crime is committed on Indian lands. (*United States* v. *McBratney,* 104 U. S. 621; *United States* v. *Bailey,* 1 McLean 234, Fed. Cas. No. 14,495.)

The order appealed from should be affirmed, without costs.

All concur. Present — CUNNINGHAM, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Order affirmed, without costs of this appeal to either party. [See *post,* p. 952.]